## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FRESENIUS KABI USA, LLC** | Civ. No. 15-3654 (KM) (MAH) |
| **Plaintiff,** | **OPINION** |
| **v.** | |
| **FERA PHARMACEUTICALS, LLC, and OAKWOOD LABORATORIES, LLC** | |
| **Defendants.** | |

### KEVIN MCNULTY, U.S.D.J.

This is a patent infringement case brought by Fresenius Kabi USA, LLC ("Fresenius") against the defendants, Fera Pharmaceuticals and Oakwood Laboratories (together, "Fera"). Fresenius claims that Fera, if it is allowed to sell certain generic drugs, will infringe three of its patents: Patent Nos. 9,006,289 ("the '289 patent"), 9,168,238 ("the '238 patent"), and the 9,168,239 ("the '239 patent"). All three patents describe formulations of levothyroxine, a hormone produced by the thyroid. I earlier construed a number of those patents' key terms (ECF No. 327, the "*Markman* Opinion"), denied Fresenius's motion to dismiss Fera's inequitable conduct counterclaims, and preliminarily enjoined Fera from launching a generic version of Fresenius's levothyroxine formulation. (ECF No. 328 (the "PI Opinion", cited as "PI Op."), ECF No. 329 (the "PI Order").

Now before the Court is Fresenius's motion to dismiss Fera's antitrust counterclaims (ECF No. 330) and Fresenius's motion to stay this case pending Fera's appeal of the preliminary injunction to the Federal Circuit. (ECF No. 386). For the reasons stated herein, I will deny the motion to dismiss as presented. I will, however, sever and stay Fera's antitrust counterclaims pending further order of the Court. I will also deny Fresenius's motion to stay

1

the entire case pending Fera's appeal of my PI Opinion and Order to the Federal Circuit.

## I. BACKGROUND

Familiarity with my previous Opinions and Orders in this case is assumed. I canvass here only the facts and procedural history pertinent to my decision on these motions.

On May 29, 2015, Fresenius filed its original complaint alleging infringement of the '289 patent. (ECF No. 1) Fera answered in July 2015 and asserted counterclaims for invalidity and non-infringement. (ECF No. 13) Fresenius amended its complaint on September 3, 2015. Fera answered and alleged additional inequitable conduct counterclaims later that month. (ECF No. 43, 56, 57). Two months later, in December 2015, Fresenius filed a second amended complaint that added infringement claims for the '238 and '239 patents. (ECF No. 83) Fera answered, and asserted essentially the same inequitable conduct counterclaims as to those two patents. (ECF No. 84).

In January 2016, Fresenius moved to dismiss Fera's inequitable conduct counterclaims for failure to state a claim. (ECF No. 89) Five months later, in May 2016, Fresenius moved for a preliminary injunction to enjoin Fera from launching its generic products at-risk. (ECF No. 187) A week later, Fera moved to amend its answer to include two antitrust counterclaims. Fresenius, Fera claimed, had delayed Fera's entry into the "the market for levothyroxine sodium power for injection, 100 mcg/vial and 500 mcg/vial" by fraudulently obtaining the patents-in-suit and bringing sham patent litigation against it and other competitors. (ECF No. 199-4, ¶¶ 284-521) Magistrate Judge Hammer granted Fera's motion to amend in August 15, 2016. (ECF No. 293) Fera filed its amended answer and counterclaims two days later. (ECF Nos. 295-96)

On September 20, 2016, I denied Fresenius's motion to dismiss Fera's inequitable conduct counterclaims but granted Fresenius's motion for a preliminary injunction. (ECF Nos. 328-29) I found Fera's allegation that

Fresenius had deceptively obtained the '289 patent sufficient to meet "the relatively low threshold" necessary to state a claim. For purposes of a preliminary injunction, however, the paper record revealed "no substantial evidence of misrepresentation, or intentional withholding of material information from the patent examiner." (PI Op. 19-23)[1] Fresenius, moreover, had demonstrated irreparable harm, that the balance of harms tipped in its favor, and that an injunction was in the public interest. (*Id.* 24-27) I therefore preliminary enjoined Fera from launching a generic version of Fresenius's levothyroxine formulation.

Also on September 20, 2016, Fresenius moved to dismiss Fera's antitrust counterclaims. (ECF No. 330) Shortly thereafter Fera took an interlocutory appeal of the preliminary injunction to the Federal Circuit. (ECF No. 361). Fresenius then moved to stay this case pending Fera's appeal to the Federal Circuit. (ECF No. 386).

The deadline for fact discovery expired on August 31, 2016. (ECF No. 60) Expert discovery closed in February 2017. (ECF No. 356). On the deadline

---

[1]  The '289 patent was the subject of the preliminary injunction motion, so my PI Opinion focused on the inequitable conduct counterclaims as to that patent. I observed, however, that the inequitable conduct allegations as to the '239 and '238 patents are essentially the same as the '289 allegations. (PI Op. 20 n.11) That remains true today. The primary basis for Fera's inequitable conduct counterclaims as to the '239 and '238 patents are alleged omissions and misleading statements contained in a December 23, 2014, declaration of Dr. Arunya Usapayant, which was also submitted in connection with, and was alleged to be crucial to, Fresenius' application for the '289 patent.

Fera's antitrust counterclaims are derivative of the conduct alleged as inequitable conduct. My reasons for denying Fresenius's motion to dismiss the inequitable conduct counterclaims but granting a preliminary injunction therefore bear on Fera antitrust counterclaims as to all three patents. That fact has not been lost on the parties, who each cite to the PI Opinion as reason to grant, or deny, Fresenius's motion to dismiss Counts 10 and 11. (*See, e.g.*, ECF Nos. 330-1 p.3 ("Fera's *Walker Process* fraud and sham litigation counterclaims are derivative claims, because they depend upon Fera first proving its existing inequitable conduct counterclaims, on which this Court found Fera does not have a likelihood of success.") 369 p. 9 ("Defendants' *Walker Process* fraud allegations are largely based on their inequitable conduct counterclaims. The Court has already considered, and denied, Plaintiff's motion to dismiss the inequitable conduct counterclaims."))

for dispositive motions, March 3, 2017, Fresenius filed a motion for summary judgment as to infringement for certain claims. (ECF No. 404) A trial date has not yet been set.

## II. DISCUSSION

### A. Motion to Dismiss Counterclaims

Fresenius first moves to dismiss Counterclaim Count 10, which alleges *Walker Process* fraud, and Count 11, which alleges sham litigation, each in violation of Section 2 of the Sherman Act, 15 U.S.C § 2, and the Clayton Act, 15 U.S.C. §§ 15, 26, for failure to state a claim. *See* Fed. R. Civ. P 12(b)(6). For the purposes of a motion to dismiss, the facts alleged in the counterclaim-complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). The factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The parties agree as to the legal principles governing such claims. A patentee "who brings an infringement suit may be subject to antitrust liability . . . if the alleged infringer (the antitrust plaintiff) proves (1) that the asserted patent was obtained through knowing and willful fraud within the meaning of *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 177 (1965), or (2) that the infringement suit was 'a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor,' *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961)." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1069 (Fed. Cir. 1998) (additional internal citations omitted)).

4

A plaintiff asserting a *Walker Process* claim must show (1) "that the defendant procured the relevant patent by knowing and willful fraud on the PTO or (in the case of an assignee) that the defendant maintained and enforced the patent with knowledge of the fraudulent manner in which it was obtained" and (2) "all the elements otherwise necessary to establish a Sherman Act monopolization charge." *Ritz Camera & Image, LLC, v. Sandisk Corp.*, 700 F.3d 503, 506 (Fed. Cir. 2012) (*citing Walker Process*, 382 U.S. at 174, 176-77)). To prevail on a sham litigation claim, a plaintiff must show that the lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect to succeed on the merits" and subjectively is "an attempt to interfere *directly* with the business relationships of a competitor." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993) (emphasis in original) (internal citations omitted).

The real question here is whether Fera has alleged sufficient factual matter to elevate the underlying claims of inequitable conduct to the level of monopoly abuse or sham litigation. Fresenius, with some justice, points to a number of potential deficiencies.

One threshold concern with these antitrust claims is that Fera, although it intends to compete with Fresenius, does not factually allege that it is prepared to do so. *See Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 882 (Fed. Cir. 1985) (finding that plaintiff failed to show antitrust injury because it was not prepared to enter the relevant market); *but see Bristol Meyer Squibb Co. v. Ben Venue Labs*, 90 F. Supp. 2d 540, 544-46 (D.N.J. 2000) (rejecting the same argument for cases brought under the Hatch-Waxman Act). Nor does it factually allege that Fresenius seeks to squelch competition from other participants in the relevant market.[2] *See Brunswick Corp. v. Pueblo Bowl-*

---

[2]     Fera alleges upon information and belief that Fresenius has filed "actions against numerous competitors in the relevant market," although no such lawsuits (beyond this lawsuit) are identified. (ECF No. 294, ¶¶ 452, 478) *See* Fed. R. Civ. P. 11, Notes of Advisory Committee on 1993 Amendments (pleading on information and belief

*O-Matic*, 429 U.S. 477, 488-89 (1977) ("The antitrust laws . . . were enacted for 'the protection of *competition*, not *competitors* . . . . Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.")

Fresenius also points to a lack of specificity about the relevant market. Fera alleges, for example, that the relevant product market is the market for "levothyroxine sodium power for injection, 100mcg/vial and 500 mcg/vial." There is no factual averment, however, establishing why that might be the case. *See, e.g., Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 436 (3d Cir. 1997) ("Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, . . . the relevant market is legally insufficient and a motion to dismiss may be granted.")

As to Fera's sham litigation counterclaim, there is of course the problem of my PI Opinion. It is difficult to accept Fera's allegation that the underlying infringement suit is objectively baseless (or brought in subjective bad faith) when I have already found that Fresenius is likely to prevail on the merits.

It is possible to debate whether these claims should now be dismissed, and Fera be put to the burden of amending them if it can. I have determined, however, that it is neither necessary nor desirable to consider those issues now. I have therefore opted for an alternative solution.

### B.    Severance and Stay

This Court has the discretionary authority to sever and stay claims, for purposes of pretrial proceedings, *see* Fed. R. Civ. P. 26(d)(2), or for trial, *see* Fed. R. Civ. P. 42(b), in the interests of justice and efficiency. *See e.g., Otsuka*

---

"does not relieve litigations from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances").

*Pharm. Co. v. Torrent Pharms., Ltd.*, 118 F. Supp. 3d 646, 559-60 (D.N.J. 2015); *Warner Lambert Co. v. Purepac Pharm. Co.*, Nos. 98-2749, 99-05948,00-02053, 2000 U.S. Dist. LEXIS 22559, at *32 (D.N.J. Dec. 22, 2000). As each party acknowledges, Fera's antitrust counterclaims are derivative of the inequitable conduct counterclaims. A stay of Counts 10 and 11 in favor of Counts 1 through 9 will therefore ensure a more orderly procedure, place any future rulings about Counts 10 and 11 on firmer ground, and ultimately "make[] the issues a jury must consider less complex." *Otsuka*, 118 F. Supp. 3d at 559-60 (quoting *Warner Lambert*, 2000 U.S. Dist. LEXIS 22559, at *32)). A severance and stay of Counts 10 and 11 makes sense, as a matter of logic and case management.

Consider, for example, a scenario in which a stay is denied, but the patents-in-suit are found to be valid and enforceable, and Fera's generic formulation of levothyroxine is found to infringe. In such a case, Fera's *Walker Process* and sham litigation counterclaims would likely be mooted; enforcement of a valid patent does not generally violate the antitrust laws. If so, then all of the discovery and litigation on complex issues peculiar to the antitrust counterclaims, such as market definition, anticompetitive effect, and damages, will have been wasted.[3]

Or consider the opposite scenario, in which a stay is granted, the inequitable conduct allegations are litigated separately, and they succeed. Litigation and discovery as to Fera's inequitable conduct counterclaims will look much the same with or without Counts 10 and 11. And the litigation of inequitable conduct will have provided a sturdy legal and factual foundation for any future rulings as to the derivative antitrust counterclaims.

The case law has recognized the principles I state here:

---

[3] Indeed, one of the few outstanding discovery disputes involves antitrust damages.

> [I]f plaintiff succeeds in its patent infringement action, a
> significant portion of defendant's proof relative to its § 2
> Sherman Act claim would become irrelevant. . . . Likewise,
> during the patent infringement suit, defendant would have an
> opportunity to present its defenses of invalidity and inequitable
> conduct. Resolution of these issues would become law of the
> case and also eliminate some of the proof that would otherwise
> be necessary. Accordingly, the interest of judicial efficiency
> favors separating the patent issues from those grounded in
> antitrust principles.

*Warner Lambert*, at *33-34 (quoting *Hunter Douglas, Inc. v. Comfortex Corp.*, 44 F. Supp. 2d 145, 152 (N.D.N.Y. 1999) (alterations in original omitted)). No surprise, then, that severance and stay of antitrust counterclaims in patent infringement suits has become "standard practice." *In re Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986); *see also Warner Lambert Co.*, 2000 U.S. Dist. LEXIS 22559, at *31-32 (collecting cases); *Otsuka*, 118 F. Supp. 3d at 559-60 (collecting cases).

That "standard practice" is especially appropriate here. Until August 2016, this was a typical Hatch-Waxman patent infringement case involving allegations of infringement and counterclaims for non-infringement, invalidity, unenforceability, and inequitable conduct. Fresenius, to be sure, may have upped the ante by moving for a preliminary injunction in May 2016, but the essentials of the anticompetitive conduct alleged here—that Fresenius duped the patent examiner into granting Fresenius the '289, '238 and '239 patents through fraudulent acts or omissions—have been part of this case since December 2015.[4] There has already been substantial investment in the litigation of the infringement and inequitable conduct issues on which Fera's *Walker Process* and sham litigation counterclaims will depend. That is all the more reason to consolidate gains and focus on those infringement and inequitable conduct issues now.

---

[4]    Fera says that Fresenius has been threatening to file a preliminary injunction motion since September 2015.

In short, severance and stay of Counts 10 and 11 of the Fera's amended answer and counterclaims will ensure an orderly presentation of the issues, conserve judicial resources, and "enhance[] the parties' right to a jury trial by making the issues the jury must consider less complex." *Otsuka*, 118 F. Supp. 3d at 659-660 (quoting *Warner Lambert*, 2000 U.S. Dist. LEXIS 22559, at *32)). I will therefore sever and stay Fera's antitrust counterclaims pending the resolution of the patent infringement issues.

### C.    **Stay Pending Appeal**

I turn to Fresenius's motion to stay the entire case pending Fera's appeal of my PI Opinion and Order. This motion for a stay pending appeal has one eyebrow-raising feature: it is brought by the beneficiary of the ruling that is being appealed by its adversary. What I mean to say is that I have entered a preliminary injunction in Fresenius's favor, and Fresenius's litigation objective is doubtless to make that injunction permanent. While an injunction *pendente lite* remains in effect, Fresenius presumably would be content to prolong the case forever.

Another atypical feature of Fresenius's request is that it is not made under traditional mechanisms for a stay pending an appeal. Under Fed. R. Civ. P. 62(c), a court may "suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights" while "an appeal is pending from an interlocutory order." The Federal Rules (and Federal Circuit Rules) of Appellate Procedure also provide that a party may move for an order "suspending, modifying, restoring, or granting an injunction while an appeal is pending." Fed. R. App. P. 8. Either way, the standard is the same:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). If these factors look familiar to Fresenius, they should: "[T]he standard for obtaining a stay pending appeal is essentially the same as that for obtaining a preliminary injunction." *Conestoga Wood Specialists Corp., v. Sec'y of U.S. Dept. of Health and Human Servs.*, No. 13-1144, 2012 U.S. App. LEXIS 2706, at *1 (3d Cir. Feb. 7, 2013.)

Fresenius has not addressed whether it is entitled to a stay pending appeal by the usual route of an application under Federal Rule of Civil Procedure 62(c) or Appellate Rule 8(a)(1)(C). Such an argument, if asserted, would obviously fail. Again, Fresenius is the beneficiary of the preliminary injunction; its rights and interests are totally secure while the appeal is pending. Regardless of whether it is likely to succeed in defeating Fera's appeal, it cannot show irreparable harm in the interim. On the other hand, for reasons stated below, there is some reason to think that Fera could be competitively disadvantaged by a stay. It is also not clear where the public interest would lie, if at all, in staying this case under these circumstances. In short, the balance of these factors favors against a stay, and I would decline to grant such relief if it were requested under the usual rules of procedure.

In the alternative, however, I consider that the Court possesses the "inherent power" to enter stays "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (same). This seems to be where Fresenius focuses its energies. The parties substantially agree that the following factors should guide a court in determining whether such a discretionary stay is appropriate:

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a

trial date has been set.

*Nussbaum v. Diversified Consultants, Inc.*, Civ. No. 15-600, 2015 U.S. Dist. LEXIS 129750, at *4 (D.N.J. Sept. 28, 2015) (quoting *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014); *see also Stryker Trauma S.A. v. Synthes*, Civ. Action No. 01-3879, 2008 U.S. Dist. LEXIS 23955, at *4-5 (D.N.J. Mar. 26, 2008). Here, too, I find that the balance of these factors weighs clearly against staying this case pending Fera's appeal of my PI Opinion and Order.

### 1. Prejudice or tactical disadvantage to non-moving party if stay granted

Fresenius claims that a stay would not unduly prejudice or tactically disadvantage Fera; Fera, it implies, should simply sit tight, hope for a reversal, and resume litigating if and when that occurs. That is wrong, says Fera; litigation of other issues should proceed in district court. Even if Fera prevails in the Federal Circuit and dissolves the preliminary injunction, it will have won no more than the right to launch its generic products "at-risk." To eliminate the "risk" of infringement liability, it would still need to prevail on the merits of the infringement issues, the resolution of which should not be delayed. There is also the risk, Fera says, that its generic competitors (some of which were co-defendants, until they settled) could gain FDA approval while this case is stayed. Such FDA approval would diminish any competitive advantage Fera (which already has FDA approval) may currently possess. Fresenius replies that these disadvantages are self-imposed. Fera, like those other competitors, can settle at any time, but it hasn't, presumably because it has decided that settling is not in its best interests.

Fresenius's concerns are substantial, but I nevertheless think that Fera has the better of each argument. That Fera, unlike other defendants or former defendants, continues to fight Fresenius's allegations of patent infringement does not weigh against it. Fera may believe more strongly in its defenses and counterclaims, or it may just have a greater appetite for risk. In

any case, Fera is entitled to assert its legitimate rights; it has no obligation to settle just because others have done so. *See CTF Hotel Holdings v. Marriot*, 381 F.3d 131, 139-40 (3d Cir. 2004) (stating that a party seeking a stay must "state a clear and countervailing interest to abridge a party's right to litigate"). Fresenius does not deny, however, that a stay might put Fera at some competitive disadvantage. So I tend to agree that a stay in this case might prejudice Fera to some extent.

As to prejudice or disadvantage caused by delay, I accept on principle Fresenius's argument that the costs might be acceptable if offset by other benefits. For the reasons discussed below, however, I do not think that a stay would do much to simplify this case, or that the denial of a stay would impose any unfair hardship on Fresenius. On the other hand, a stay would impede Fera's goal of reaching the merits, which must be resolved in its favor if it is to launch its generic products free and clear of infringement liability. Whether or not the Federal Circuit permits Fera to launch at-risk, Fera retains a legitimate interest in pursuing a final decision.

In sum, I find that this first factor weighs somewhat in favor of denial of a stay.

## 2. Hardship or inequity to the moving party if stay denied

This second factor is not such a close call. Fresenius has failed to articulate how denial of stay would pose any unusual hardship or inequity to itself. It generically claims that a stay will reduce the burden or expense on the Court and the parties. I suppose that may be said of almost any proposed stay; litigation not actively pursued may cost little, at least in the short run. But the routine costs of litigation, without more, do not constitute a particular hardship. *See, e.g., Akishev*, 23 F. Supp. 3d at 447-48 ("[T]he mere incidence of concurrent litigation is not, without more, sufficiently onerous to establish 'clear' hardship or 'inequity'. . . .").

At any rate, discovery in this case is now closed. Insofar as the equities are concerned, the preliminary injunction secures Fresenius's interest in preventing Fera from entering the market unless and until Fera prevails in the Federal Circuit, or ultimately prevails on the merits in this Court. All in all, denial of a stay would entail no particular hardship or inequity to Fresenius.

### 3. Simplification of issues

Fresenius also fails to present a convincing argument as to this third factor. It argues generally that staying this case pending appeal will allow the parties to simplify the issues and defenses in litigation. But how? Fresenius provides no straightforward answer.

No doubt the appellate resolution of, say, *Markman* claim construction issues could alter the course of this case, if they had been appealed—but they have not been appealed. Fera's interlocutory appeal of the preliminary injunction, it is true, might shift the advantage to one party or the other. It is not likely, however, to change or amend any claims, eliminate any defenses, or dismiss any causes of action.

In that way this case is different from the patent infringement cases in which courts have typically issued stays. All the cases cited by Fresenius, for example, involved a defendant (*i.e.*, a non-patent holder) who filed a collateral proceeding at the Patent Office, such as an *ex parte* reexamination or *inter partes* review, and, pending the outcome, sought a stay of the district court infringement case. *E.g., Ei Du. Pont de Nemours & Co. v. MacDermid Printing Solutions LLC*, Civ. Action No. 10-3409, 2012 U.S. Dist. LEXIS 101678, at *4-5 (D.N.J. July 23, 2012) (defendant filed IPR review and sought a stay); *Oy Ajat, Ltd. v. Vatech Am., Inc.*, C.A. No. 10-4875 (PGS), 2012 U.S. Dist. LEXIS 43443, at *3-4 (D.N.J. Mar. 29, 2012) (defendant filed an IPR review and sought stay); *Stryker Trauma*, 2008 U.S. Dist. LEXIS 23955, at *3-4 (D.N.J. Mar. 26, 2008); *Eberle v. Harris*, Civil Action No. 03-5809, 2005 U.S. Dist. LEXIS 3185, at *2-3 (D.N.J. Dec. 8, 2005) (defendant sought *ex parte* reexamination and stay);

*Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 405-6 (W.D.N.Y. 1999)
(defendant filed *ex parte* reexamination and sought a stay); *GPAC, Inc. v.
D.W.W. Enterprises, Inc.*, 144 F.R.D. 60, 61-62 (D.N.J. 1992 (defendant filed an
*ex parte* reexamination and sought a stay).

A stay in such circumstances makes sense: A final PTO determination
may invalidate, amend, or narrow the claims at issue, so the benefits of stay
are likely to outweigh the costs. Here, however, no such potentially dispositive
issues have been appealed to the Federal Circuit, so there is no reason to think
that waiting for the Federal Circuit to decide Fera's appeal will simplify the
issues or defenses at all.

I therefore find that the third factor favors denial of a stay.

### 4.    Discovery and trial date

Although a trial date has not been set, fact and expert discovery is
now closed. (ECF No. 60, 336, 356)[5] "Courts have typically denied requests for
a stay where the parties were 'deep' into discovery or discovery had almost
been completed." *Nussbaum*, 2015 U.S. Dist. LEXIS 129750, at *7. This factor,
too, favors denial of Fresenius's request for a stay.

\* \* \*

On balance, then, all four factors weigh against granting a stay in this
case. Particularly persuasive here is the fact that discovery is essentially
completed and that Fresenius has failed to articulate why denial would impose
a particular hardship or inequity to it. Fresenius undoubtedly would prefer to
litigate this case in one court at a time, but it cannot unilaterally force Fera to
do so. In this Court, the case will therefore proceed in the usual course.
Fresenius's motion for a stay is denied.

---

[5]     I note, however, that there appears to be a few remaining discovery disputes
between the parties. (ECF Nos. 356, 407, 421)

### III. CONCLUSION

For the reasons set forth above, Fresenius's motion to dismiss Counts 10 and 11 of Fera's amended counterclaims for failure to state a claim is DENIED as presented, without prejudice. Instead, Counts 10 and 11 are severed and stayed until further order of the Court. The motion to stay the action pending resolution of Fera's appeal of my PI Order and Opinion is DENIED.

Dated: May 19, 2017

**KEVIN MCNULTY**
**United States District Judge**